UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PETER A. FONTE,

        Petitioner,

v.                                     Case No. 06-C-1082

LARRY JENKINS,

        Respondent.

**MEMORANDUM DECISION AND ORDER
DENYING PETITION FOR HABEAS CORPUS**

      Petitioner, Peter A. Fonte, was convicted in the Circuit Court for Walworth County, Wisconsin of various crimes, including homicide by intoxicated use of a motor vehicle contrary to Wis. Stat. § 940.09. The charges against Fonte arose out of a boating accident that occurred on Geneva Lake on July 16, 2001. He was sentenced to twenty-five years in the custody of the Wisconsin Department of Corrections, the first seven to be served in secure confinement and the rest on supervision. After exhausting his state court remedies, Fonte filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that he is in custody in violation of his constitutional rights. In support of his petition, Fonte claims that the intoxicated homicide statute under which he was convicted, Wis. Stat. § 940.09 (2001-02), is unconstitutional because it (a) does not require the State to prove a causal connection between the operator's intoxication and the homicide, or (b) impermissibly presumes such a connection. Fonte also claims that the trial court's denial of his motion to change venue based on pretrial publicity deprived him of his right to a fair trial and that his trial attorney's failure to object to evidence relating to his lifestyle and use of an

alias constituted ineffective assistance of counsel. Because the decision of the Wisconsin Supreme Court rejecting Fonte's claims was not based on an unreasonable determination of the facts in light of the evidence presented and is neither contrary to, nor an unreasonable application of, clearly established federal law, the petition will be denied.

**FACTUAL BACKGROUND**

The Wisconsin Supreme Court accurately summarized the facts of the case and the lower court proceedings. Fonte and his friends were in the Lake Geneva area for a concert at Alpine Valley. *State v. Fonte*, 2005 WI 77, 698 N.W.2d 594, 598 (Wis. 2005). On July 16, 2001, they rented a motorboat to use on Geneva Lake. *Id.* Traci Paladino and Kelly Pleffner were among the friends present that day, and they were part of a group of people who jumped off the boat to swim in the lake. *Id.* Some time later, while still in the water, Pleffner saw the boat coming towards them and tried to dive below it. *Id.* When she resurfaced, she was unable to locate Paladino and noticed blood in the water. *Id.* Paladino's body was recovered approximately five months later. *Id.* at 599. Water safety patrol arrived shortly after the incident, and Walworth County sheriff deputies took in the group for individual questioning. *Id.* Fonte first identified himself as Anthony Michaels. *Id.* at 598. During questioning, officers noticed Fonte smelled of intoxicants, his eyes were bloodshot, and his speech was impaired. *Id.* At 9:00 p.m. Fonte was given a breathalyzer that registered 0.06%, and a blood draw at 10:42 p.m. showed he had a blood alcohol content of 0.052% at that time. *Id.* at 598-99. At trial, State toxicologist Casey Collins testified that at the time of the accident, Fonte had a blood alcohol concentration of 0.152%. *Id.* at 601-02. During questioning, Fonte was asked whether there was anything he needed to tell officers. *Id.* at 598. Fonte responded

2

that he put the boat in neutral after his friends jumped into the water and then walked away from the controls. *Id.* at 598-99. Fonte was charged with homicide by the operation of a motor vehicle while under the influence of an intoxicant and while having a prohibited alcohol concentration contrary to Wis. Stat. § 940.09(1)(a) & (b).

Prior to trial Fonte moved for a change of venue due to extensive pretrial publicity. (Petr.'s Br. at 2.) In support of his motion, he presented evidence that between July 17, 2001, and January 10, 2002, forty-four news articles about this incident were published in local newspapers, one of which stated that syringes with Fonte's DNA were found in the hotel room where the group of friends had stayed. *Fonte*, 698 N.W.2d at 606. The trial court nevertheless denied the motion, and the case proceeded to trial in Walworth County.

Fonte was convicted and, as noted above, was sentenced to a twenty-five year bifurcated sentence, seven years of initial confinement and eighteen years of extended supervision. Following a denial of post-conviction relief, Fonte appealed. The Wisconsin Court of Appeals in an unpublished opinion reversed the conviction on the ground that the jury instructions were misleading. *State v. Fonte*, No. 03-2097-CR, 2004 WL 1736976 (Wis. Ct. App. Aug. 4, 2004). The State appealed and the Wisconsin Supreme Court reversed the Court of Appeals and reinstated Fonte's conviction. *State v. Fonte*, 2005 WI 77, 698 N.W.2d 594 (Wis. 2005). The Wisconsin Supreme Court concluded: (1) the jury instruction in question did not deny Fonte a fair trial; (2) there was sufficient evidence to support the claim that Fonte was operating the boat at the time the accident occurred; (3) he was not denied the effective assistance of counsel; (4) the circuit court did not err when it denied Fonte's motion for a change of venue based upon pretrial publicity; and (5) Wis. Stat. § 940.09 is constitutional. *Id.* at 608. After the Wisconsin Supreme Court denied his

motion to reconsider and all state court remedies were exhausted, Fonte petitioned this court for a writ of habeas corpus.

**ANALYSIS**

**I. AEDPA Standard**

Habeas relief for those serving sentences imposed by state courts shall not be granted under the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA) unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In this case, the petitioner contends the Wisconsin Supreme Court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, and a portion of the state court's decision was based on an unreasonable determination of the facts. A state court's decision is contrary to Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision may also be contrary to Supreme Court precedent "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." *Id.* "The text of

4

§ 2254(d)(1) . . . suggests that the state court's decision must be substantially different from the relevant precedent of [the Supreme Court]." *Id.*

The state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "A state court also involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*

To prevail under section 2254(d)(2), a petitioner must show the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "A factual issue made by a State court shall be presumed to be correct" unless the petitioner can rebut the "presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**II. Constitutionality of Wis. Stat. § 940.09**

Fonte was convicted of homicide by intoxicated use of a motor vehicle contrary to Wis. Stat. § 940.09. In pertinent part, the statute subjects to criminal penalties any person who "causes the death of another by the operating or handling of a vehicle while under the influence of an intoxicant." Wis. Stat. § 940.09(1)(a). Crucial to Fonte's argument is the fact that the statute does not require the death to be caused by the driver's alcohol-induced impairment. Under § 940.09(1)(a), an intoxicated driver is criminally liable for a homicide caused by his operation of

a motor vehicle, even in the absence of evidence that his operation was impaired. While the driver may be relieved of liability for the death if his intoxication did not play a role in the accident, the burden is on the driver to prove his intoxication was not a factor. In the words of the statute, "the defendant has a defense if he or she proves by a preponderance of the evidence that the death would have occurred even if he or she had been exercising due care and he or she had not been under the influence of an intoxicant . . . ." Wis. Stat. § 940.09(2)(a). Fonte argues that the statute is unconstitutional because "it relieves the state of proving beyond a reasonable doubt a causal connection between the wrongful conduct (the driver's intoxication or the driver's faulty operation of the vehicle) and the particular result of the wrongful conduct (death). (Br. in Supp. of Pet. at 5.) In effect, Fonte contends, the statute operates to create a presumption that the driver's intoxicated condition caused the accident anytime a death occurs, and then shifts the burden to the defendant to rebut the presumption.[1]

Fonte's argument that § 940.09(1)(a) is unconstitutional was originally rejected by the Wisconsin Supreme Court in *State v. Caibaiosai* 363 N.W.2d 574 (1985). In *Caibaiosai*, the majority acknowledged that § 940.09(1)(a) does not require proof that the defendant's alcohol-impaired driving caused the death, but held that operating a motor vehicle while under the influence of an intoxicant was such inherently dangerous behavior that the legislature was justified in subjecting an individual who drove in such a condition to a greater penalty when the driving caused a death, regardless of whether the prosecutor could establish that the driver's intoxication was to

---

[1] Although Fonte also argues that § 940.09(1)(a) eliminates the requirement of proving cause altogether (Br. in Supp. of Pet. at 5), this is clearly an exaggeration. The record reflects that the jury in this case was correctly instructed that the offense includes three elements, the second of which was that the defendant's operation of the vehicle caused the death of Traci M. Paladino. (Tr. 10, at 93.)

6

Case 1:06-cv-01082-WCG   Filed 05/10/07   Page 6 of 18   Document 24

a motor vehicle, even in the absence of evidence that his operation was impaired. While the driver may be relieved of liability for the death if his intoxication did not play a role in the accident, the burden is on the driver to prove his intoxication was not a factor. In the words of the statute, "the defendant has a defense if he or she proves by a preponderance of the evidence that the death would have occurred even if he or she had been exercising due care and he or she had not been under the influence of an intoxicant . . . ." Wis. Stat. § 940.09(2)(a). Fonte argues that the statute is unconstitutional because "it relieves the state of proving beyond a reasonable doubt a causal connection between the wrongful conduct (the driver's intoxication or the driver's faulty operation of the vehicle) and the particular result of the wrongful conduct (death). (Br. in Supp. of Pet. at 5.) In effect, Fonte contends, the statute operates to create a presumption that the driver's intoxicated condition caused the accident anytime a death occurs, and then shifts the burden to the defendant to rebut the presumption.[1]

Fonte's argument that § 940.09(1)(a) is unconstitutional was originally rejected by the Wisconsin Supreme Court in *State v. Caibaiosai* 363 N.W.2d 574 (1985). In *Caibaiosai*, the majority acknowledged that § 940.09(1)(a) does not require proof that the defendant's alcohol-impaired driving caused the death, but held that operating a motor vehicle while under the influence of an intoxicant was such inherently dangerous behavior that the legislature was justified in subjecting an individual who drove in such a condition to a greater penalty when the driving caused a death, regardless of whether the prosecutor could establish that the driver's intoxication was to

---

[1] Although Fonte also argues that § 940.09(1)(a) eliminates the requirement of proving cause altogether (Br. in Supp. of Pet. at 5), this is clearly an exaggeration. The record reflects that the jury in this case was correctly instructed that the offense includes three elements, the second of which was that the defendant's operation of the vehicle caused the death of Traci M. Paladino. (Tr. 10, at 93.)

blame. *Id.* at 577-78. In affirming Fonte's conviction in this case, the Wisconsin Supreme Court rejected his request that it overrule *Caibaiosai* and instead reaffirmed the rationale it offered there. It is this decision that Fonte contends is contrary to clearly established federal law. His argument in support of his contention essentially adopts the reasoning of the dissent in *Caibaiosai* by then Justice Abrahamson.

In her dissent in *Caibaiosai*, Justice Abrahamson argued that while driving under the influence was "deplorable, antisocial, dangerous behavior," *id.* at 581, it was unjust, and unconstitutional, to hold an individual criminally liable for another's death in the absence of proof that the death was caused by the wrongful conduct. To illustrate her point, Justice Abrahamson offered four examples of drivers who could be convicted of homicide under § 940.09(1)(a) even though their driving was not to blame for the death:

> 1. A driver under the influence of an intoxicant kills a child who darts into the path of the car (Vehicle A) from between parked cars.
>
> 2. A driver under the influence of an intoxicant stops the car (Vehicle A) at a red light. His passenger is killed when Car B rear-ends Vehicle A.
>
> 3. A driver under the influence of an intoxicant stops the car (Vehicle A) at a red light and proceeds through the intersection after the light turns green. His passenger is killed when Car B strikes Vehicle A.
>
> 4. A driver under the influence of an intoxicant loses control of the motorcycle (Vehicle A) when it skids on an oil slick. The passenger in Vehicle A is killed when she hits a tree.

*Id.* at 582. In Wisconsin, the test for causation is the substantial factor test. *State v. Oimen*, 516 N.W.2d 399, 405 n.6 (Wis. 1994). According to the standard jury instruction for the crime of homicide by intoxicated use of a motor vehicle, "'cause' means that the defendant's operation of a vehicle was a substantial factor in producing the death." WIS JI–CRIMINAL 1185. Given this

7

broad definition of cause, Justice Abrahamson noted that in each of her examples, the operation of Vehicle A was a substantial factor in producing the victim's death.[2] Thus, she noted, the driver in each of the examples could be convicted of homicide by intoxicated use of a motor vehicle under § 940.09(1)(a), even though his intoxication had nothing to do with the death. Justice Abrahamson argued that by relieving the State of the obligation to prove a causal connection between the wrongful conduct (impaired driving) and the harm (death), the Wisconsin legislature had gone beyond its constitutional powers. *Id.* at 584. In her view, the statute "violates basic notions of fairness embodied in the due process clause and is unconstitutional." *Id.*

Justice Abrahamson also rejected the notion that the provision allowing the driver to escape criminal liability by proving that the death would have occurred even if he had not been intoxicated preserved the constitutionality of the statute. Citing *Patterson v. New York*, 432 U.S. 197 (1977), she noted that there are limits to how far a State may go in labeling elements of a crime as affirmative defenses and thereby reallocating burdens of proof. To the extent § 940.09(1)(a) is viewed as incorporating, albeit silently, a rebuttable presumption that the intoxicated condition caused the death, Justice Abrahamson noted, the presumption would be an unconstitutional denial of due process under *Sandstrom v. Montana*, 442 U.S. 510 (1979), because it shifts to the defendant the burden of persuading the fact-finder as to an element of the crime. This is essentially the argument Fonte presents here.

---

[2]The *Caibaiosai* majority did not dispute Justice Abrahamson's application of § 940.09(1)(a) to her examples. It agreed that "[t]he commission of the offense does not require any erratic or negligent driving." 363 N.W.2d at 577. Thus, it appears that in that court's view the substantial factor test permits a finding that a defendant's operation of a vehicle causes a death even when there is nothing blameworthy about the defendant's operation of his vehicle. It is nevertheless arguable that, unless the driver's operation of his vehicle is somehow deficient, his driving is at most only a factor, not a substantial factor, in any death that occurs in the course of an accident.

8

To prevail on his § 2254 petition here, Fonte must show that the majority decision in *Caibaiosai* is contrary to federal law clearly established by Supreme Court precedent. The question of whether it was contrary to federal law at all was addressed by Judge Crabb prior to the enactment of AEDPA when the defendant in that case sought federal relief under § 2254. In *Caibaiosai v. Barrington*, 643 F. Supp. 1007 (W.D. Wis. 1986), Judge Crabb found no clear federal support for the argument that due process required proof of a causal connection between the intoxication and death in order to sustain a conviction for homicide by intoxicated use of a motor vehicle. Likening Wisconsin's intoxicated homicide statute to felony murder laws in other states, Judge Crabb observed:

> The issue raised by petitioner's challenge to § 940.09 is not whether the legislature made a wise choice in defining the offense, but whether the statute offends a fundamental principle of justice. Answering this question is a difficult task; indeed, determining the proper analytic framework is difficult, because "the existence of constitutional constraints on the substantive criminal law is largely terra incognita.". . . It is significant that plaintiff can point to no case in which a court has invalidated a felony-murder conviction on constitutional grounds, although most felony-murder statutes require no proof of specific culpability with respect to the murder. Generally, the state is required to prove only the culpability specified for the underlying crime. Despite scholarly criticism of such statutes that impose an additional penalty for the death of another without any independent proof of blameworthiness for the death, *see, e.g.*, LaFave & Scott, *Criminal Law*, p. 264 (1972); Packer, *Mens Rea and the Supreme Court*, 1962 Sup. Ct. Rev. 107, the courts have not held them invalid.

*Id.* at 1012 (footnote omitted). And if it was not fundamentally unfair to punish a defendant without proof that his intoxication caused the death, it also followed that, if the state chose to allow as a defense the fact that the death would have occurred even in the absence of the defendant's intoxication, it was constitutionally permissible to place the burden of proving such a defense on the defendant. *Id.*

9

The Eleventh Circuit reached the same conclusion in rejecting a state prisoner's challenge to Florida's intoxicated manslaughter statute in *Armenia v. Dugger*, 867 F.2d 1370 (11th Cir. 1989). In *Armenia*, also decided pre-AEDPA, the court held:

> No federal constitutional violation exists in this case. The Florida Supreme Court's application and interpretation of Florida's DWI-manslaughter statute do not violate federal due process. Florida has chosen to take a harsh stance against drunken driving; it is Florida's prerogative to do so. Because we cannot establish a due process violation, Armenia's claim becomes only a question of state law. Logically, questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief.

*Id.* at 1376. Similar statutes have been upheld in Indiana and Washington, although neither addressed the constitutional issues Fonte raises here. *See Micinski v. State*, 487 N.E.2d 150 (Ind. 1986); *State v. Rivas*, 896 P.2d 57 (Wash. 1995).

Like Judge Crabb, I also conclude that the Wisconsin Supreme Court's rejection of Fonte's challenge to the constitutionality of § 940.09(1)(a) is neither contrary to, nor an unreasonable application of, clearly established federal law. Wisconsin's vehicular homicide statute, like those of the other states referred to above, imposes strict liability on persons who drive while under the influence of an intoxicant for any death caused by their driving. In enacting § 940.09(1)(a), the Wisconsin legislature has decided that people who choose to operate a motor vehicle while under the influence of an intoxicant should be held responsible for any death that is caused by their operation of such vehicle regardless of their state of mind. Fonte has failed to cite any clearly established federal law that supports his contention that, in doing so, the Wisconsin legislature has exceeded its authority under the United States Constitution. To the contrary, in *Patterson v. New York*, the Court explicitly recognized that "preventing and dealing with crime is much more the

10

business of the States than it is of the Federal Government . . . and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States." 432 U.S. 197, 201 (1977). And while the Court has recognized that statutes imposing strict criminal liability without a *scienter* requirement are generally disfavored, *Staples v. United States*, 511 U.S. 600, 605-06 (1994), it has also held that "a criminal statute is not necessarily rendered unconstitutional because the legislature chose not to include the intent to violate the statute or regulation as an element of the crime." *Lambert v. California*, 355 U.S. 225, 228 (1957) ("We do not go with Blackstone in saying that 'a vicious will' is necessary to constitute a crime . . . for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition."). The Seventh Circuit has observed that "[a] state's decisions regarding which actions or activities will give rise to strict criminal liability rest within that state's sound legislative discretion." *Stepniewski v. Gagnon*, 732 F.2d 567, 571 (7th Cir. 1984).

In modern times, imposing strict criminal liability for conduct that endangers public health, safety, and welfare has become more common. *United States v. Freed*, 401 U.S. 601, 607 (1971). Driving a motor vehicle under the influence of an intoxicant is obviously conduct that endangers the safety of the public. To operate a motor vehicle in such a condition is a crime in itself, even when the operation of the vehicle does not cause the death of another. *See* Wis. Stat. § 346.63. Given the inherent danger of such conduct, and the absence of federal law to the contrary, I am unable to say that states may not hold individuals who operate a motor vehicle under the influence of an intoxicant strictly liable for any death caused by their operation. And since states are constitutionally free to impose strict liability under such circumstances, it necessarily follows that

11

they do not violate the Constitution by allowing a driver to avoid liability if he is able to show that the death would have occurred even if he had not been under the influence and had been exercising due care. This apparent effort to ameliorate the perceived harshness of the statute does not render it unconstitutional. Accordingly, Fonte's claim that he is entitled to federal relief because § 940.09 is unconstitutional fails.

**III. Impartial Jury**

Fonte next claims that he was deprived of a fair trial due to pretrial publicity and the trial court's denial of his motion for a change of venue. He argues that record of the voir dire shows that several of the jurors who ultimately decided that case were affected by the pretrial publicity and, as a result, were not impartial. The Wisconsin Supreme Court concluded that despite the extensive pretrial publicity, the trial court properly exercised its discretion in denying Fonte's motion to change venue. Based on its examination of the transcript of the voir dire, the Court concluded that an impartial jury was impaneled. Fonte claims the Wisconsin Supreme Court's decision is contrary to clearly established federal law.

There is no doubt that one accused of a crime has a right to a fair and impartial jury. "The due process clause of the Fourteenth Amendment entitles a state criminal defendant to an impartial jury . . . which is to say a jury that determines guilt on the basis of the judge's instructions and the evidence introduced at trial, as distinct from preconceptions or other extraneous sources of decision." *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004) (*citing Morgan v. Illinois*, 504 U.S. 719, 726 (1992)). The issue raised by Fonte is whether the finding by the Wisconsin courts that each of the jurors was fair and impartial should be set aside by this court. This issue is "plainly

12

one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). In deciding a petition for relief under § 2254, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Ellsworth v. Levenhagen*, 248 F.3d 634, 638 (7th Cir. 2001) ("'[S]tate court factual findings that are reasonably based on the record are accorded a presumption of correctness.' " (citations omitted)).

The mere fact that there was extensive media coverage of the events giving rise to the case, or even that some of the jurors were exposed to the coverage and formed a preconceived notion of the guilt of the accused, does not require a change of venue. More than 35 years ago, the Supreme Court observed:

> It is not required . . . that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961).

In this case, neither the nature of the charges, nor the character of the pretrial publicity, support Fonte's claim that a change of venue was necessary to ensure a fair trial. The charge, after all, was not that he had intentionally taken the life of another, but that he had accidentally done so

13

while under the influence of an intoxicant. While certainly a serious crime, it is not the type that would generally inflame the passion of a community. In *Dowd*, by contrast, the defendant was being tried for one of six separate murders he had allegedly confessed to having committed in the Evanston, Indiana, community in which he was tried. 366 U.S. at 719-20. And in *Patton v. Young*, a high school math teacher was being tried for the murder of a student he had allegedly confessed to raping and killing. 467 U.S. at 1026-27. Crimes of this nature are far more likely to engender the anger and passion of a community than an unintended death resulting from a boating accident. Moreover, unlike *Dowd*, the media coverage in this case was not inflammatory. The state courts found that the newspaper articles submitted by Fonte in support of his motion to change venue "contained factual information about the accident and the criminal proceedings against Fonte." 698 N.W.2d at 606. More than seven months had passed since the publication of most of the articles Fonte considered inflammatory, and the trial court dismissed all potential jurors who said they had read about the case in the time immediately preceding the trial. *Id.*

Finally, Fonte has failed to overcome the strong presumption of correctness accorded to the state court finding that the jury was impartial. Fonte argues that the "voir dire shows jurors with significant information about the case ultimately sat on the jury that decided Fonte's fate." (Petr.'s Br. at 12.) But as already noted, the mere fact that potential jurors have been exposed to pretrial publicity does not render them impartial. *Dowd*, 377 U.S. at 722-23. Each of the jurors ultimately selected to decide the case assured both the court and counsel that he could set aside whatever information he might have obtained from the media and decide the case fairly and impartially. (R.69 at 78-155.) Fonte has not presented any evidence that even suggests why the selected jurors should not have been believed.

14

Fonte also complains that he had to use his peremptory strikes to remove jurors who should have been excused for cause. A review of the voir dire transcript does not support his contention that the trial court improperly denied a motion to strike a juror for cause. But even if true, the fact that he used his peremptory strikes to remove the allegedly biased jurors cured any error that otherwise might have occurred. That Fonte used his peremptory strikes to remove the jurors is of no constitutional significance. *See United States v. Martinez-Salazar*, 528 U.S. 304, 317 (2000) (holding that a defendant's due process rights are not violated when he uses a peremptory challenge to remove a juror who should have been excused for cause).

In sum, Fonte has failed to show that the jury that decided his case was biased or prejudiced. The trial court considered his motion to change venue, but concluded an impartial jury could be impaneled without changing venue for trial. A review of the record demonstrates that, as the Wisconsin Supreme Court found, "voir dire was properly employed by the circuit court to produce an impartial jury." 698 N.W.2d at 607. Fonte has failed to show that the state court's decision is contrary to, or unreasonably applied, clearly established federal law, or that it rests on an unreasonable determination of the facts in light of the evidence presented. Accordingly, his claim that he was denied his right to a fair trial by the denial of his motion to change venue fails.

**IV. Ineffective assistance of counsel**

Lastly, Fonte argues that he was denied the effective assistance of counsel because his trial counsel failed to object to the prosecution's use of his "alias" and evidence of his lifestyle. As noted above, when first questioned by police, Fonte identified himself as Anthony Michaels. He used the same name at his first court appearance. Fonte's use of this alias was disclosed at trial, as well as

15

the fact that he and his friends were in town to attend a concert by Phil Lesh, bass player for the Grateful Dead, a band whose followers are widely known as "Dead Heads." It was also revealed in the course of trial that he had attended more that 50 concerts over the previous one or two years, that he and his friends knew each other only by first names or nicknames, and that they had all slept in the same hotel room the night before the accident. Fonte claimed that this evidence was prejudicial because it painted him as an irresponsible person who was likely to abuse drugs or alcohol. He claims that his attorney's failure to object to the admission of this evidence constitutes deficient performance and deprived him of a fair trial.

To prevail on a claim of ineffective assistance of counsel, petitioner must show "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In rejecting Fonte's claim that his attorney provided constitutionally deficient representation, the Wisconsin Supreme Court explicitly applied *Strickland*. 698 N.W.2d at 603-04. The State Supreme Court affirmed the trial court findings that counsel's failure to object to the evidence Fonte now challenges did not constitute deficient performance and that, in any event, its admission was not unduly prejudicial. With respect to the evidence that Fonte used an alias, the court found reasonable counsel's explanation that she made a strategic decision not to object, since Fonte's own witnesses knew him as Anthony Michaels, and it would confuse them and the jury to attempt to avoid mention of it. The court also noted that the decision not to object was made after consultation with Fonte, and in any event, given the nature of the crime charged, it was not prejudicial. Although Fonte challenges the reasonableness of counsel's decision and the state courts' acceptance of it, his challenge is insufficient to overcome the "strong presumption that counsel acted reasonably within professional norms." *Strickland*, 466 U.S. at 689.

16

Moreover, even aside from counsel's strategic reasons for not objecting, the trial court concluded that evidence of Fonte's use of an alias was relevant and thus would have been allowed even if counsel had objected. As the trial court noted, "the fact that he gave a false name . . . can lead to an inference of guilt." (Answer to Pet., Ex. K at 108.) The trial court's conclusion is not without legal support. *See State v. Bergeron*, 470 N.W.2d 322, 325 (Wis. App. 1991) (holding use of alias admissible when it forms part of the background of the case or where it shows intent to cover up involvement in the crime). Here, the evidence showed that Fonte lied to police about his true identity when first questioned about the accident. Other courts have also recognized that the use of an alias under such circumstances, like flight from police, can serve as evidence of one's consciousness of guilt. *See, e.g., United States v. Wallace*, 461 F.3d 15, 25-26 (1st Cir. 2006). In light of the foregoing, the Wisconsin courts' analysis of the issue represents a reasonable application of *Strickland.*

The same conclusion follows with respect to the failure of counsel to object to what Fonte has termed lifestyle evidence. Although the parties fail to place this evidence in context in their respective briefs, it appears from a review of the trial court's decision on Fonte's motion for post-conviction relief that the evidence was relevant to show Fonte's relation with several of the witnesses who were present at the time of the accident and who later testified at trial. In denying Fonte's claim that his trial attorney had provided ineffective assistance in failing to object to such evidence, the trial court first rejected Fonte's contention that the fact that he and his friends went to Grateful Dead concerts suggested that they were unemployed drug addicts. (Answer to Pet., Ex. K at 104.) But more important, the trial court noted that this evidence was relevant to the question of bias. The evidence that Fonte and the others on the boat enjoyed the same music, went to

17

concerts together, and even shared a hotel room the night before the accident showed that they had a close relationship that could impact the credibility of their testimony about the events that occurred on the day of the accident. (Answer to Pet., Ex. K. at 105.) As the trial court observed, "[t]he bringing out of these concerts and the relationships of these people at these various concerts and the relationship at the Alpine concert itself and why they got together and how they got together was all very appropriate material for illustrating the respective bias of those witnesses, what they were all about, how they related to the defendant which was crucial . . . to the jury weighing their credibility and trying to decide what was the truth in this particular case." (Answer to Pet., Ex. K at 106.) The trial court's analysis, affirmed by the Wisconsin Supreme Court, is neither contrary to, nor an unreasonable application of, *Strickland*. Fonte's claim of ineffective assistance of counsel thus fails as well.

## CONCLUSION

In sum, Fonte's conviction for homicide by intoxicated operation of a motor vehicle was not obtained in violation of his federal rights. It is therefore ordered that his petition for a writ of habeas corpus is denied.

Dated this  9th   day of May, 2007.

 s/ William C. Griesbach
William C. Griesbach
United States District Judge